FILED

2008 Sep-16  PM 02:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **LAURA KENNEDY and** | ) | |
| **JUDITH PERRY,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. CV-07-S-408-NE** |
| | ) | |
| **ALTERNATIVE FINANCIAL** | ) | |
| **SOLUTIONS, L.L.C.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiffs, Laura Kennedy and Judith Perry, asserted claims against their former employer, Alternative Financial Solutions, L.L.C., for sex-based discrimination, retaliation, and harassment, all pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000 *et seq.*[1]  The case currently is before the court on defendant's motion for summary judgment.[2]  Upon consideration, the court concludes the motion should be granted in part and denied in part.

## I.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 indicates that summary judgment "should

---

[1]*See* doc. no. 1 (Complaint).  The jurisdictional section of plaintiff's complaint also refers to 28 U.S.C. § 1332, the diversity statute, and 28 U.S.C. § 1367, which addresses supplemental jurisdiction.  *See* Complaint, at ¶ 2.  Even so, plaintiff does not make any claims based upon diversity of citizenship or supplemental jurisdiction.

[2]Doc. no. 11.

be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[3] "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.

> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable [factfinder] to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (internal quotations and citation omitted) (bracketed text suppled).

---

[3] Rule 56 was recently amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure. The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*." Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied). Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

## II. SUMMARY OF FACTS

Defendant, Alternative Financial Solutions, L.L.C. ("defendant"), is a check-cashing, payday-loan, and bill-paying business with twenty-two stores and sixty employees throughout the state of Alabama.[4]

Plaintiff Judith Perry ("Perry") began working for defendant in December of 1998 as a teller and income-tax-preparer.[5]  She was promoted to the position of Store Manager at Store No. 302 in Huntsville, Alabama, after approximately one year; and, in May of 2003, she became the manager of the company's Collections Department.[6] The Collections Department was physically located on the premises of Store No. 302, but it operated separately from the store and coordinated collection efforts for all of defendant's Alabama stores.[7]

Plaintiff Laura Kennedy ("Kennedy") is Perry's niece.  Kennedy began working for defendant in September of 2001 as a Teller at Store No. 302.[8]  Perry was the Store Manager of Store No. 302 when Kennedy was hired.[9]  In January of 2002,

---

[4]Defendant's evidentiary submission, Tab C (Deposition of Mike McCaleb), at 11-12; Tab I (Affidavit of Mike McCaleb), at ¶ 4.

[5]Defendant's evidentiary submission, Tab A (Deposition of Judith Perry), at 14-16.

[6]*Id.* at 16, 21-23.

[7]Defendant's evidentiary submission, Tab B (Deposition of Laura Kennedy), at 99-102.

[8]*Id.* at 13, 37-38.

[9]*Id.* at 44.

Kennedy was promoted to Assistant Manager; and, when Perry became Collections Manager in May of 2003, Kennedy became the Store Manager of Store No. 302.[10] As Store Manager, Kennedy worked at least forty hours, five days a week, and one Saturday a month.[11] She was entitled to a monthly bonus based on the store's performance. As Store Manager, Kennedy had discretion to allocate available bonus funds among the store's employees.[12] In May of 2005, Kennedy was receiving approximately sixty to sixty-five percent of the available bonus funds for Store No. 302, and Jenny York, the only other employee in the store, received the other thirty-five to forty percent.[13]

Kennedy requested and received maternity leave for nine weeks beginning on May 27, 2005. Her original plan had been to take six weeks of maternity leave, during which she would be compensated at half of her regular hourly rate of pay, but without any bonuses. Due to child care problems, however, Kennedy received approval to extend her leave an additional three weeks. She did not receive any compensation during this additional three-week period.[14] Jenny York filled in for

---

[10]*Id.* at 53-54.

[11]*Id.* at 86-87.

[12]*Id.* at 64-66.

[13]Kennedy Deposition, at 67-68.

[14]*Id.* at 66, 68, 76-77.

Kennedy as Store Manager of Store No. 302 during Kennedy's maternity leave.[15]

York also assumed responsibility for dividing up the store's monthly bonus funds

during Kennedy's leave.  York received the majority of the bonus herself.  The

remainder of the bonus was split between a male employee named Tim McCollough

and a female employee named Valerie.  York decided to award some of the bonus to

Valerie and McCollough because they helped her out as backup tellers during

Kennedy's absence.[16]

On Thursday, July 28, 2005, Kennedy telephoned Mike McCaleb, the Regional

Manager who supervised the region encompassing Store No. 302, to discuss her

return to work from maternity leave the following Monday, August 1, 2005.[17] Before

the telephone call, Kennedy understood that she would be allowed to return to her

position as Store Manager of Store No. 302, working forty hours a week and one

Saturday a month.[18]  But, during the conversation, Kennedy and McCaleb "kind of

went back and forth" on different work options.[19]  Kennedy told McCaleb that she

preferred to work only four days a week, and no Saturdays.[20]  McCaleb apparently

---

[15]*Id.* at 74-79.

[16]McCaleb Deposition, at 73-75; defendant's evidentiary submission, Tab E (Deposition of Tim McCollough), at 14-15.

[17]Kennedy Deposition, at 80.

[18]*Id.* at 84.

[19]*Id.*

[20]*Id.* at 85-87.

informed Kenendy that arrangement would not be available at Store No. 302.  He offered Kennedy a position working primarily at Store No. 129 (another Huntsville store), but also "floating" to other stores in the area.  The position at Store No. 129 would have required Kennedy to work forty hours, five days a week, and every other Saturday.  Kennedy told McCaleb she would take the job at Store No. 129 if she could receive a car allowance, but McCaleb refused because he had already given a car allowance to Tim McCullough, who also is McCaleb's domestic partner.[21] McCaleb subsequently told Kennedy she would not be allowed to return to her former job as Store Manager at Store No. 302, even under the same terms she enjoyed before her maternity leave.[22]

McCaleb told Kennedy he would consult with Allen Franks, the owner of the company, to see whether other arrangements could be made.[23]  McCaleb did not want Franks to know that Kennedy would no longer be the Store Manager at Store No. 302, because if a new Store Manager came on board, the store bonuses would decrease because each Store Manager has to "build up" her own bonus for her store.[24]  Despite

---

[21]McCaleb Deposition, at 129.

[22]Kennedy Deposition, at 80-93.  It is not clear from the record *exactly* when McCaleb told Kennedy she could not return to her former position.  It is clear, however, that the conversation occurred after Kennedy told McCaleb she did not want to work any more Saturdays. *Id.* at 85-86.

[23]*Id.* at 90.

[24]*Id.* at 81, 93.

those concerns, however, McCaleb did contact Franks, and following their conversation, he telephoned plaintiff to tell her that Franks said to "just let [her] go."[25] Kennedy told McCaleb she needed a job and wanted her old job back, but McCaleb would not allow her to return to that job.[26]

Kennedy telephoned Allen Franks approximately one month after her last conversation with McCaleb, and she ended up speaking to Franks in a conference call that also included McCaleb. Kennedy voiced her concerns over the way she had been treated, and again stated that she needed a job. Franks denied that he had told McCaleb to let Kennedy go, and asked Kennedy "what it would take to make [her] happy." She said she wanted her old job back, but she never received the job.[27]

Jenny York became the Store Manager of Store No. 302 on a permanent basis after Kennedy's employment ended in 2005. Emily Rogers, another female employee, is the current Store Manager of Store No. 302.[28] Tim McCollough never

---

[25]*Id.* at 102.

[26]*Id.* at 103.

[27]*Id.* at 105-08. McCaleb presented a significantly different version of the events surrounding the end of Kennedy's employment with defendant. McCaleb testified that Kennedy quit her job because "the company could not meet [her] demands for return" to work after maternity leave. McCaleb Deposition, at 77, 81. Mc Caleb claims that he offered Kennedy the opportunity to return to her old job before she quit, but she declined. *Id.* at 87. According to McCaleb, Kennedy never said she would be willing to return to her position as Store Manager of Store No. 302 until she contacted Allen Franklin a month or two *after* the end of her employment. *Id.* at 95.

[28]McCaleb Deposition, at 51.

became a Store Manager,[29] and he never held any position of supervisory authority over Perry or Kennedy.[30]  Instead, in January of 2005, McCollough began working as the Assistant Regional Manager over Collections at several different stores in North Alabama.[31]

While Kennedy was still on leave, McCaleb often asked Perry whether Kennedy planned to return from her leave, when she would return, and whether she might instead go to work somewhere else.  Perry informed McCaleb that she thought those questions were inappropriate, and she refused to answer them.[32]  Within a couple of days after the end of Kennedy's employment on July 28, 2005, Perry began complaining to McCaleb that Kennedy had not been treated fairly.  Perry lodged that same complaint with McCaleb on several other occasions.[33]

On August 3, 2005, McCaleb received written complaints from four other, female employees about Perry.  Some of these employees complained that Perry's attitude "took a downhill turn" after Kennedy did not return to work.  The employees making the complaints said that Perry was not happy, and that she did not want to

---

[29]*Id.*

[30]McCollough Deposition, at 22.

[31]*Id.* at 14-15.

[32]Perry Deposition, at 48-50.

[33]*Id.* at 87-89.

8

work with any of the other employees as "team players."[34]  One employee said she

enjoyed her job more after Perry was no longer working.[35]  McCaleb did not request

these employees to write down their complaints about Perry, but when they voiced

their complaints to him, he instructed them to put the complaints in writing.[36]  Prior

to August 3, 2005, Perry did not have any complaints or any other negative remarks

in her personnel file.[37]

In April or May of 2005, Perry's sister asked her to join her on a trip to the

Bahamas scheduled for that October.[38]  Perry received McCaleb's verbal permission

to go on the trip, which she anticipated would require her to take one to one-and-a-

half days of leave from work.  However, Perry does not recall completing a formal

leave request for the vacation, and defendant's records do not show that she submitted

one.[39]  Later in 2005, but sometime before September of that year, Perry learned that

she needed to have thyroid surgery.  She requested and received four weeks of paid

medical leave beginning on September 2, 2005, but her doctor subsequently extended

---

[34]McCaleb Deposition, at 107-08.

[35]*Id.* at 116-17.

[36]*Id.* at 108, 122.

[37]*Id.* at 120-21.

[38]Perry Deposition, at 63, 66.

[39]*Id.* at 63, 70; defendant's evidentiary submission, Tab I (Affidavit of Mike McCaleb), at ¶ 11.

her leave period for an additional two weeks, until October 12, 2005.[40]  After Perry initially received McCaleb's verbal permission in the spring of 2005 to go to the Bahamas in October, she did not again mention the trip to McCaleb.  Even so, Perry did have the dates of the trip written on her desk calendar, to which all other employees in the store had access.[41]  While Perry was at the airport to catch her flight to the Bahamas, she encountered Patricia Jean, another of defendant's employees, and informed Ms. Jean where she was going.[42]  Perry reported back to work on October 12, as scheduled, but after she arrived, McCaleb informed her that her employment was being terminated.[43]  McCaleb testified that he made the decision to terminate Perry's employment because he thought she had lied to him about needing extra time off for her thyroid surgery, when in reality she was traveling to the Bahamas.[44] McCaleb never gave Perry an opportunity to explain to him the circumstances surrounding her medical leave and the trip to the Bahamas.[45]

A female employee named Nina Hawthorne took over Perry's duties as Collections Manager while Perry was on medical leave, and she received that position

---

[40]Perry Deposition, at 39, 63.

[41]*Id.* at 101.

[42]*Id.* at 71-72; McCaleb Deposition, at 100.

[43]Perry Deposition, at 45-47.

[44]McCaleb Deposition, at 100; McCaleb Affidavit, at ¶ 12.

[45]McCaleb Deposition, at 106-07.

10

on a permanent basis after Perry was terminated.[46]   McCaleb testified that, since approximately January of 2006, McCollough has worked both as an employee in the Collections Department, and as the Supervisor at a store called Alabama Check Recovery in Athens, Alabama, which is a new, but related, company started by Allen Franks.[47]   In his October 25, 2007 deposition, Tim McCollough testified that his job title since October of 2005 had been "Area manager over collections, Huntsville and Athens, Alabama Check Recovery."[48]   In that position, McCollough worked at both the Store No. 302 location in Huntsville, and at the Alabama Check Recovery location in Athens.[49]

Kennedy, Perry, and another female employee named Stacie Vanwagner all testified that McCaleb told them he preferred not to hire pregnant females because he knew they would have to go on maternity leave, and that he preferred not to hire females with small children because they might want to quit their jobs to take care of their children.[50]   Defendant had no *written* policy to that effect, however,[51] and

---

[46]*Id.* at 110-11.

[47]*Id.* at 41, 53.

[48]McCollough Deposition, at 12.

[49]*Id.* at 30.

[50]Perry Deposition, at 30; Kennedy Deposition, at 152-53; plaintiff's evidentiary submission, Exhibit 3 (Deposition of Stacie VanWagner), at 80-81.

[51]Kennedy Deposition, at 153; Perry Deposition, at 30.

Kennedy had a four-year-old child when she was first hired by defendant.[52]
Furthermore, at the time Kennedy's employment with defendant ended, thirteen of the
fifteen employees under McCaleb's supervision were females.   Three of those
females had small children.[53]

## III.  DISCUSSION

### A.   Abandonment of Sexual Harassment Claims and Kennedy's Retaliation Claim

At the summary judgment stage, both plaintiffs have effectively abandoned
their claims for sex-based harassment, and Kennedy has abandoned her retaliation
claim.[54]  Plaintiffs offered no response to defendant's well-supported arguments that
summary judgment should be granted on those claims.   Issues and contentions not
raised in a party's brief are deemed abandoned.  *See, e.g.*, *Chapman,* 229 F.3d at 1027
("Parties opposing summary judgment are appropriately charged with the
responsibility of marshaling and presenting their evidence before summary judgment
is granted, not afterwards.").   *Cf. Road Sprinkler Fitters Local Union No. 669 v.
Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (holding that a
district court can "properly treat as abandoned a claim alleged in the complaint but

---

[52]Kennedy Deposition, at 155-56.

[53]*Id.* at 157-58.

[54]Plaintiffs did offer argument about *Perry's* retaliation claim, and consequently did
not abandon that claim.  *See* doc. no. 14 (plaintiff's brief), at 24-25.

not even raised as a ground for summary judgment") (citing *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 269 (7th Cir. 1986) (holding that a ground not pressed in opposition to a motion for summary judgment is to be treated by the district court as abandoned)).

> In opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him. There is no burden on the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned. . . .

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citations and internal quotation marks omitted).

Accordingly, the only remaining claims are Kennedy's claim for sex-based discrimination, and Perry's claims for sex-based discrimination and retaliation.

## B.    Sex-Based Discrimination

As an initial matter, the court must determine whether to consider plaintiffs' allegations of pregnancy discrimination as part of their gender discrimination claims. Plaintiffs assert pregnancy discrimination as a theory in their brief opposing summary judgment, but defendant urges the court not to consider that theory because plaintiffs did not plead pregnancy discrimination in their complaint, and they have not otherwise asserted it during the course of litigation.

Congress added § 701(k), the "Pregnancy Discrimination Act," to Title VII in 1978, for the purpose of including "pregnancy, childbirth, or related medical conditions" in the prohibition against discrimination on the basis of a person's sex. *See* 42 U.S.C. § 2000e(k); *see also Armindo v. Padlocker, Inc.,* 209 F.3d 1319, 1320 (11th Cir. 2000); *Byrd v. Lakeshore Hospital*, 30 F.3d 1380, 1382 (11th Cir. 1994). Thus, the Pregnancy Discrimination Act is *part of* Title VII, a statute that plaintiffs did specifically reference in their complaint.[55]  *See Armstrong v. Flowers Hosp., Inc.,* 33 F.3d 1308, 1312 (11th Cir. 1994) ("Rather than introducing new substantive provisions protecting the rights of pregnant women, the PDA brought discrimination on the basis of pregnancy within the existing statutory framework prohibiting sex-based discrimination.").  Furthermore, the complaint contains more than sufficient allegations to have placed defendant on notice of a pregnancy discrimination claim. For example, plaintiffs state:

> McCaleb also had a policy of refusing to hire pregnant females or females with young children.  Kennedy became pregnant and took a maternity leave of absence.  Kennedy gave birth to a daughter on June 1, 2005.  Following the birth of her daughter, Kennedy had nine weeks of approved leave.  At the end of her leave, Kennedy was terminated because of her gender.  Her job duties and bonus structure were reassigned to a male employee during her maternity leave.
>
>        . . . .

---

[55]*See* Complaint, at ¶ 2 ("Jurisdiction is appropriate pursuant to . . . Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*").

Mike McCaleb refused to allow Kennedy to return to her old job after her maternity leave. McCaleb wanted to put Kennedy into a different position, without her bonus structure, and that would require her to travel and work weekends. The job that Kennedy had prior to taking her leave only required her to work one Saturday per month. The job that McCaleb was putting Kennedy in after her maternity leave required Kennedy to be on call 24 hours a day, 7 days a week, and would result in a loss of income.

McCaleb refused to return Kennedy to the job that she had prior to her maternity leave, and fired her.

During Kennedy's employment at AFS, McCaleb repeatedly told Kennedy that he did not want to hire women with small children and he did not want to hire women who were pregnant, because of his concerns that he would have to provide them with leave.

Mike McCaleb fired Kennedy at the end of her maternity leave . . . .

. . . .

During Kennedy's maternity leave, manager Mike McCaleb told Tim McCollough, and Perry, that they would get some of Kennedy's bonus while she was on maternity leave. In practice, Perry received none of the bonus. Kennedy's entire portion of the bonus was diverted solely to Tim McCullough [sic], a less senior and less experienced male, on a permanent basis. Furthermore, because Mike McCaleb had diverted a large bonus and benefits to Tim McCullough [sic] during Kennedy's pregnancy, he could no longer pay Kennedy the same bonus structure, or even keep her at the same job, when she returned from her pregnancy.

. . . .

During her employment with [defendant], McCaleb repeatedly told Perry that he did not want to hire women with small children and he

15

did not want to hire women who were pregnant, because of his concerns that he would have to provide them with leave.  Perry complained to Mike McCaleb about his reluctance to hire pregnant women.  McCaleb was always expressed concerned [sic] about the amount of hours a prospective employee might be able to work, and he considered gender as a factor.[56]

Accordingly, plaintiff Laura Kennedy will not be precluded from relying upon a theory of pregnancy discrimination in response to defendant's motion for summary judgment.  The court notes, however, that plaintiff Judith Perry makes no allegation of being pregnant or having children at any time relevant to this lawsuit.  Consequently, Perry may not rely upon a pregnancy discrimination theory, except insofar as she alleges that she was retaliated against for complaining about the pregnancy discrimination allegedly suffered by Kennedy.

## 1.    Direct evidence of pregnancy discrimination

Kennedy argues that the following allegations constitute direct evidence of pregnancy discrimination:

> (1) that both Kennedy and Perry testified that Mike McCaleb had expressed a preference to them against hiring women who were pregnant or who had small children, and (2) Kennedy claims that she was told that she could not return to the job that she had held prior to taking maternity leave.[57]

Direct evidence is generally defined as evidence which, if believed, proves the

---

[56]Complaint, at ¶¶ 9, 11-14, 19, 22.

[57]Doc. no. 14 (plaintiffs' brief), at 18.

16

existence of a fact in issue without the need of an inference or presumption. *See, e.g.*, *Bass v. Board of County Commissioners*, 256 F.3d 1095, 1111 (11th Cir. 2001) (holding that the term "direct evidence," when used in the context of Title VII race discrimination claim, "refers to a type of evidence which, if true, would require no inferential leap in order for a court to find discrimination"). In the context of employment discrimination cases, direct evidence of an employer's intent to discriminate on the basis of some prohibited characteristic is more specifically defined as "evidence which reflects 'a discriminatory or retaliatory attitude *correlating to the discrimination or retaliation complained of by the employee.*'" *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (quoting *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1998) (in turn quoting *Caban-Wheeler v. Elsea*, 904 F.2d 1549, 1555 (11th Cir. 1990)) (emphasis supplied).

McCaleb's statement that Kennedy could not return to the job she had held prior to taking maternity leave does not constitute direct evidence of discrimination. Indeed, the statement does not constitute *any* evidence of discrimination; it merely indicates the point in time at which Kennedy became unable to return to that job.

McCaleb's statements that he preferred not to *hire* pregnant women or women with small children also do not constitute direct evidence of discrimination in the

17

*termination* of Kennedy's employment.  To so hold would require making the following logical progression:  even though McCaleb did not like to hire pregnant women or women with small children, he hired Kennedy in 2001, despite the fact that she had a young child at the time, but then he chose to wait until after Kennedy had worked for several years before firing her *because of* her second pregnancy. Consequently, McCaleb's comment does not establish, without inference or presumption, that Kennedy was fired for discriminatory reasons.  *See Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1330 (11th Cir. 1998) (holding that, in a termination case, a statement by a decisionmaker that he wanted to staff the plant with Hispanic workers was not direct evidence of race discrimination because "any direct link between the statement and [the employer's] discriminatory intent" was broken by the fact that the plaintiff had been hired by the same decisionmaker).  There is no direct evidence of pregnancy discrimination.

### 2.   Circumstantial evidence of pregnancy and other gender discrimination

Plaintiffs do not claim to have any other direct evidence of discrimination. Accordingly, they must prove their claims with circumstantial evidence, navigating the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S.

18

248 (1981).  Under this analysis, a plaintiff must first establish a *prima facie* case of disparate treatment, which creates a presumption of discrimination.  To rebut the presumption, the employer then must articulate a legitimate, nondiscriminatory reason for the disputed employment action.  If the employer does so, the presumption of discrimination drops from the case, and the burden shifts back to the plaintiff to show that defendant's proffered reason is merely a pretext for unlawful discrimination.  *See McDonnell Douglas,* 411 U.S. at 802-05; *Burdine,* 450 U.S. at 252-56.

> **a.    *Prima facie case***

To establish a *prima facie* case of gender-based discrimination, or pregnancy discrimination, in the termination of employment, plaintiffs must show that (1) they are members of a protected class, (2) they suffered an adverse employment action, (3) the employer treated similarly situated employees outside of their protected class more favorably, and (4) they were qualified to perform the duties of their jobs.  *See, e.g., Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1228 (11th Cir. 2002); *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001).  *See also Armstrong,* 33 F.3d at 1314 (applying the elements of a prima face claim of gender discrimination to the plaintiff's claim of pregnancy discrimination).

It is undisputed that plaintiffs, both of whom are female, are members of a class of persons protected by Title VII.  It also is undisputed that Kennedy had recently

19

returned from maternity leave when her employment with defendant ended. Kennedy, therefore, also belongs to the class of persons protected by the Pregnancy Discrimination Act. Further, construing the facts in the light most favorable to plaintiffs, both of them were terminated from their employment with defendant.[58] Termination clearly is an adverse employment action. *See Llampallas v. Mini-Circuits Lab, Inc.,* 163 F.3d 1236, 1246 n.18 (11th Cir. 1998) (stating that termination is the "classic and ultimate 'tangible employment action'"). Finally, there is no dispute that either plaintiff was qualified to perform the duties of her job. In termination cases — as contrasted to cases involving an employer's failure to hire or promote — the question of whether a plaintiff was qualified to perform the duties of her job often is not an issue. *See Crapp*, 242 F.3d at 1020. The Eleventh Circuit has recognized that, "in cases where a plaintiff has held a position for a significant period of time, qualification for that position sufficient to satisfy the test of a *prima facie* case can be inferred." *Rosenfield v. Wellington Leisure Products, Inc.*, 827 F.2d

---

[58]There is a fact dispute as to whether Kennedy's employment was terminated, or whether she voluntarily resigned. At the summary judgment stage, however, the court must construe the facts in the light most favorable to Kennedy, and assume that her employment was in fact terminated.

Both plaintiffs also complain that only male employees received car allowances and cell phone allowances. There is no evidence that either plaintiff ever requested a cell phone allowance. There also is no evidence that Perry ever requested a car allowance. The fact that other female employees may not have received these allowances is not evidence of gender discrimination *against plaintiffs.* Kennedy's argument about male employees' receipt of car allowances is addressed more fully at pages 21-23, *infra.*

1493, 1495 n.2 (11th Cir. 1987); *see also Pace v. Southern Railway Sys.*, 701 F.2d 1383, 1386 n.7 (11th Cir. 1983). Here, due to plaintiffs' employment history with defendant, their qualification for their respective positions can be inferred.

The remaining question is whether either plaintiff was replaced by, or otherwise treated less favorably than, an individual outside her protected class.

### i.      Perry

Perry asserts that McCollough took over her position after she was terminated, but the record does not support that contention. Rather, the record shows that, since Perry's termination, McCollough has served both as a *non-supervisory* employee in the Collections Department, and, as a supervisor or manager at Alabama Check Recovery — a separate entity from Alternative Financial Solutions. Nina Hawthorne, a female, assumed Perry's duties as Collections Manager while Perry was on medical leave, and Hawthorne was awarded that position on a permanent basis after Perry was terminated. Consequently, Perry cannot satisfy all the elements of the prima facie case on her gender discrimination claim, and summary judgment will be granted on that claim.

### ii.      Kennedy

### (a)      Gender discrimination

Kennedy was replaced by Jenny York, a female, who had been filling in for

21

Kennedy as Store Manager at Store No. 302 during Kennedy's maternity leave. Kennedy contends that it was McCollough who replaced her after her maternity leave, but the evidence does not support that contention. McCollough did receive a portion of Kennedy's store bonus *during her maternity leave*, but there is no evidence that such an arrangement continued past Kennedy's leave period.[59]   Furthermore, McCollough never served as Store Manager in any of defendant's stores; he consequently could not have replaced Kennedy as Store Manager. Because she has no evidence of being replaced by a male, Kennedy cannot support a prima facie case for a termination claim based purely on gender discrimination.

Kennedy also argues gender discrimination in that she was refused a car allowance after being offered the job at Store No. 129, despite the fact that — and perhaps even *because* — Tim McCollough (who also is Mike McCaleb's domestic partner)[60] already was receiving a car allowance. There is no evidence, however, that Kennedy ever requested a car allowance until she was offered the position at Store No. 129 at the end of her maternity leave. Therefore, Kennedy cannot support a claim for gender discrimination in the terms or conditions of her employment based on not receiving a car allowance at any point prior to July 28, 2005, when she discussed her

---

[59]Indeed, McCollough only received a small portion of the bonus during Kenendy's leave.   York received the majority of the bonus, and she divided the rest between McCollough and one other, female employee.

[60]*See supra* note 21.

return from maternity leave with McCaleb.  Furthermore, Kennedy has not clearly articulated how the denial of a car allowance contributed to the termination of her employment, but the court imagines the theory, in simple terms, must go something like this:  Kennedy would have chosen to take the job at Store No. 129 if she had received a car allowance.  McCaleb refused Kennedy the car allowance for discriminatory reasons, so Kennedy refused the job.  If McCaleb had given Kennedy the car allowance, she still would be employed.  As an initial matter, the court notes that this theory is somewhat inconsistent with the rest of Kennedy's case.  Kennedy's chief complaint is that she was not allowed to return to her former position *at Store No. 302* after her maternity leave.  Evidence that Kennedy did not receive a car allowance for Store No. 129 has nothing to do with that claim.  To the extent Kennedy intends to support her termination claim by relying upon the fact that she did not receive the position at *Store No. 129*, she cannot succeed.  It is uncontroverted that Kennedy turned down the job at Store No. 129.  McCaleb did not deny Kennedy the position; to the contrary, he offered her the position in an effort to accommodate some of her demands.  It is true that Kennedy rejected the offer because she could not receive a car allowance, and that she was denied a car allowance because McCollough already received one, but those facts also do not constitute evidence of discrimination.  McCollough had begun receiving a car allowance before Kennedy

even requested one.  Furthermore, McCollough was not working at Store No. 129, and he never served as Store Manager of any store.  There is no evidence, or even any allegation, that a male employee at Store No. 129 received a car allowance, or that a male employee received the position at Store No. 129 instead of Kenendy.  Accordingly, Kennedy cannot rely upon the denial of a car allowance to support a *prima facie* case of gender discrimination.

### (b)    Pregnancy discrimination

Kennedy fares better on her pregnancy discrimination claim.  There is no evidence that Jenny York was pregnant, or had recently been pregnant, when she replaced Kennedy as Store Manager at Store No. 302.  Therefore, Kennedy can demonstrate that she was treated less favorably than other, non-pregnant employees, and she has satisfied all elements of her prima facie case for pregnancy discrimination.

### b.    Pretext

Defendant asserts that Kennedy was terminated because the company could not accommodate the demands she placed upon her return to work.  That is a legitimate, non-discriminatory reason for the termination decision.  Accordingly, Kennedy can survive summary judgment on her pregnancy-based termination claim only if she comes "forward with evidence, including the previously produced

evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citing *Burdine*, 450 U.S. at 256; *McDonnell Douglas,* 411 U.S. at 804).   Kennedy's burden at this step of the analysis is that of "cast[ing] sufficient doubt on the defendants' proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct . . . .'"   *Combs*, 106 F.3d at 1538 (quoting *Cooper-Houston v. Southern Railway Co.*, 37 F.3d 603, 605 (11th Cir. 1994)); *see also Chapman*, 229 F.3d at 1024-25.   Kennedy shoulders that burden by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs*, 106 F.3d at 1538 (quoting *Sheridan v. E.I. DuPont de Nemours & Company*, 100 F.3d 1061, 1072 (3d Cir. 1996)) (internal quotation marks omitted).   Finally, Kennedy must show both that defendant's proffered reason was not the true reason for her termination, and that pregnancy discrimination was the true reason. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507-08 (1993).

Kennedy has presented evidence that, if construed in her favor, casts doubt on

defendant's proffered reason.   Kennedy acknowledges that she entered into negotiations with Mike McCaleb about the terms under which she would return to work.  She nevertheless maintains that, when the negotiations did not produce another option she preferred, she remained willing to resume her former duties.  McCaleb was aware of Kennedy's willingness to return to her former duties *during their July 28, 2005 conversation,* but he would not allow her to do so.  Defendant's assertion that Kennedy was let go because the company could not accommodate her demands is suspect in light of Kennedy's expressed willingness to return to her former job. Defendant has proffered no reason why it could not accommodate Kennedy by returning her to the former position.  Kennedy also has presented other evidence that could lead a reasonable factfinder to conclude that pregnancy discrimination was the true reason for the termination of her employment.  McCaleb's statements about not wanting to hire pregnant women or women with small children — while they are not direct evidence of a discriminatory termination — are *some* evidence of McCaleb's discriminatory intent.

Based on the foregoing, the court concludes there are genuine issues of material fact with regard to whether defendant's proffered legitimate, non-discriminatory reasons for the termination of Kennedy's employment are merely pretextual.  Accordingly, summary judgment will be denied on Kennedy's pregnancy

26

discrimination claim.

## C.     Retaliation

Perry asserts that her employment was terminated in retaliation for objecting to McCaleb's questions about Kennedy's return to work from maternity leave, and for complaining about the circumstances surrounding Kennedy's termination. "Retaliation is a separate violation of Title VII." *Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 586 (11th Cir. 2000). A plaintiff generally must prove three elements to establish a *prima facie* case of retaliation: (1) she engaged in statutorily protected expression;[61] (2) she suffered an adverse employment action; and (3) there was a causal linkage between the protected conduct and the adverse employment action. *See, e.g., Shannon v. BellSouth Telecommunications, Inc*., 292 F.3d 712, 715 (11th Cir. 2002).

Perry clearly suffered an adverse employment action when her employment was terminated. The court also finds that Perry engaged in protected expression. Defendant argues, nonetheless, that Perry cannot establish a *prima facie* case because she cannot show a causal connection between her complaints to McCaleb and the subsequent termination of her employment. The demonstration of a casual linkage

---

[61]"Statutorily protected expression includes filing complaints with the EEOC and complaining to superiors about sexual harassment." *Johnson v. Booker T. Washington Broadcasting Serv*., 234 F.3d 501, 507 (11th Cir. 2000) (citing *Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir.1989)).

at the summary judgment stage is far less onerous than proving causation by a preponderance of the evidence at trial.  At the summary judgment stage, "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated."  *Meeks v. Computer Associates International*, 15 F.3d 1013, 1021 (11th Cir. 1994) (quoting *EEOC v. Reichhold Chemical, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993)).  "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took the adverse employment action."  *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993).  *Accord Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997) ("[A] plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action.").  *See also*, *e.g.*, *Gupta*, 212 F.3d at 590 ("[A] plaintiff must show that 'the decisionmakers were aware of the protected conduct,' and 'that the protected activity and the adverse action were not wholly unrelated.'") (quoting *Farley v. Nationwide Mut. Ins.*, 197 F.3d 1322, 1337 (11th Cir. 1999)).  "Close temporal proximity between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated."  *Bass,* 256 F.3d at 1119 (citing *Gupta*, 212 F.3d at 590).  The Supreme Court has indicated that, to be sufficient standing alone, the temporal gap between events must be "'very

close.'" *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001) (*per curiam*) (quoting *O'Neal v. Ferguson Construction Company*, 237 F.3d 1248, 1253 (10th Cir. 2001)).[62]

Perry complained about McCaleb's questions concerning Kennedy's future work plans on unspecified dates during Kennedy's maternity leave. Those complaints necessarily would have been lodged on or before July 28, 2005, the last date of Kennedy's leave period and the date of her termination. Further, Perry complained about Kennedy's termination within a few days of its occurrence; or, construing the record in the light most favorable to Perry, during the first days of August, 2005. Perry's employment was terminated on October 12, 2005, approximately two and one-half months later.

The Eleventh Circuit has held that a temporal gap of two months between an

---

[62] In full text, the Supreme Court's statement in *Breeden* concerning temporal proximity is as follows:

> The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be "very close," *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (C.A.10 2001). *See e.g., Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (C.A.10 1997) (3-month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-1175 (C.A.7 1992) (4-month period insufficient). Action taken (as here) 20 months later suggests, by itself, no causality at all.

*Breeden*, 532 U.S. at 273-74.

employee's protected expression and a subsequent adverse employment action is sufficiently short to establish causation. *See Robinson v. LaFarge North America, Inc.,* 240 Fed. Appx. 824, 828-29 (11th Cir. 2007) ("Robinson established a prima facie case [of retaliation], as the demotion occurred only about two months after he filed a grievance."); *Berman v. Orkin Exterminating Co., Inc.,* 160 F.3d 697, 702 (11th Cir. 1999) (holding that the plaintiff established a *prima facie* case of retaliation when the adverse employment action "occurred within a couple months of the [plaintiff's] complaint"). A period as short as three months, however, has been held to be too long to constitute independent evidence of causation. *See Higdon v. Jackson,* 393 F.3d 1211, 1221 (11th Cir. 2004). The gap between Perry's complaints and her subsequent termination falls squarely in the middle of the continuum established by these cases. Giving Perry the benefit of the doubt, the court concludes that she has produced sufficient evidence that her complaints and her subsequent termination were causally related. Accordingly, she has satisfied the *prima facie* case on her retaliation claim.

Defendant asserts that it terminated Perry's employment for a legitimate, non-discriminatory reason, *i.e.,* because Perry "was vacationing in the Bahamas when she was on paid and approved sick time, supposed to be recovering from surgery."[63]

---

[63]Doc. no. 12 (defendant's initial brief), at 33.

Accordingly, Perry can survive summary judgment only if she can demonstrate that defendant's proffered reason actually is a pretext for retaliation.

Plaintiff argues that defendant's choice to fire her as soon as she attempted to return to work following medical leave renders the termination decision "highly suspicious."[64]   The timing of Perry's termination does not call into question the legitimacy of defendant's proffered legitimate reason;[65] to the contrary, it actually buttresses defendant's argument.   Perry was terminated as soon as she returned to work, which was immediately after McCaleb found out about her trip to the Bahamas.

Perry also asserts that she had no disciplinary record before her termination, except for the statements McCaleb allegedly "rounded up" on August 3, 2005, in retaliation for Perry's complaints to McCaleb.   These facts also do not cast any doubt on defendant's proffered legitimate, non-discriminatory reason.   Plaintiff's termination had nothing to do with her disciplinary record, or the lack thereof.   She was terminated, according to defendant, for a single incident — *i.e.,* going on a trip to the Bahamas when she was supposed to be on medical leave.   Further, Perry has no evidence that other employees with clear disciplinary records were allowed to exploit the company's leave system without being terminated.   She also has no

---

[64]Doc. no. 14 (plaintiff's brief), at 26.

[65]The court notes that neither Perry nor Kennedy filed a claim under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.*   Consequently, neither plaintiff can pursue a claim that her employment was terminated in retaliation for taking approved leave.

evidence that the negative statements McCaleb collected from other employees on August 3, 2005, had any effect whatsoever on the termination decision. Indeed, after the other employees' statements were rendered, defendant granted Perry a four-week period of *paid* medical leave, and it subsequently extended that period for an additional two weeks upon Perry's request. It defies logic that defendant would collect negative statements about Perry for the purpose of fabricating a reason to fire her, and then, within a month, grant her six weeks of paid leave.

Finally, Perry argues that defendant's proffered legitimate reason was pretextual because McCaleb had already approved Perry's trip before he even knew about her medical leave, and because McCaleb did not give her an opportunity to explain the circumstances surrounding her medical leave and her vacation before he decided to fire her. Perry cites no authority for the proposition that an employer must allow an employee the opportunity to explain her misconduct before terminating her employment, and the court knows of none, especially when there is no evidence that defendant deviated from its standard procedure when making the termination decision, or that other, similarly-situated employees who had not complained about employment practices were treated more favorably. Further, the fact that McCaleb orally consented to Perry's Bahamas vacation in April or May of 2005, before either he or Perry even knew about Perry's upcoming need for medical leave in September

32

of 2005, does not render defendant's proffered legitimate reason so implausible that a reasonable factfinder would find that reason "unworthy of credence." *See Combs*, 106 F.3d at 1538. Perry was not fired for going to the Bahamas without McCaleb's permission; she was fired for going to the Bahamas while she was supposed to be on paid medical leave, recovering from surgery.

In short, Perry has not demonstrated that defendant's proffered legitimate, non-discriminatory reason for terminating her employment was merely a pretext for retaliation. Accordingly, summary judgment is due to be granted on Perry's retaliation claim.

## IV. CONCLUSION

In accordance with the foregoing, defendant's motion is due to be granted in part and denied in part. Summary judgment will be granted on all claims asserted by plaintiff Judith Perry, as well as on plaintiff Laura Kennedy's claims for sexual harassment, non-pregnancy-based sex discrimination, and retaliation. Summary judgment will be denied on Kennedy's claim for pregnancy discrimination. An appropriate order will be entered contemporaneously herewith.

DONE this 16th day of September, 2008.

_____
United States District Judge

33